IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

PATRICK HENRY HRDLICHKA                                              PLAINTIFF

vs.                         CASE NO. 5:25-CV-05185-TLB

BENTON COUNTY, et al                                                DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

On September 15, 2025, United States District Judge Timothy L. Brooks referred this matter (ECF No. 7) to the undersigned for consideration of Plaintiff's Motion for Service of his Complaint on Separate Defendant Benton County Circuit Judge John R. Scott. (ECF No. 6). The undersigned *sua sponte* addresses whether the District Court properly exercises jurisdiction over this matter, and finding that it does not, recommends this case be **DISMISSED.**

1.      Plaintiff's Complaint was filed on September 5, 2025. (ECF No. 2). Plaintiff named as Defendants Benton County; Benton County Circuit Court Division 4; Circuit Judge John R. Scott, in his Official Capacity; William M. Prettyman, III (Plaintiff's attorney), Individually and in his Official Capacity; Rachel Freeman (Court-appointed ad litem), Individually and in her Official Capacity; and Katie Freeman (opposing counsel), Individually and in her Official Capacity. Under the guise of 42 U.S.C. § 1983, Plaintiff "challenges the unlawful and unconstitutional removal of his minor child through guardianship orders issued in Benton County, Arkansas." (ECF No. 2, ¶ 10). Plaintiff's forty-six (46) page complaint, along with five (5) exhibits, alleges and argues that the Circuit Court's guardianship orders were unconstitutional as Defendants acted to deny him access

to the courts, violated his right to substantive and procedural due process, and removed his minor child in violation of the Fourth Amendment. Plaintiff alleges that the permanent (i.e., Final) Order of guardianship, finding him unfit, violated the Constitution in a myriad of ways. In particular, Plaintiff challenges Judge Scott's conclusion that he is "unfit" as based upon "trivial and insufficient grounds." (ECF No. 2, ¶ 19).

2. On September 12, 2025, Separate Defendant Prettyman was served with Plaintiff's Complaint. (ECF No. 5).

3. On September 15, 2025, Plaintiff filed a Motion for Service by the U.S. Marshal's Service on Separate Defendant John R. Scott. (ECF No. 6). The Motion alleges that Melissa Bernard tried to serve Judge Scott at the Benton County Courthouse on September 12, 2025, but that the Courtroom bailiff refused to permit Bernard to serve Judge Scott in violation of Federal Rule of Civil Procedure 4(c)(2).

4. Plaintiff's complaints herein appear to have arisen from a domestic relations matter styled *In the Matter of the Guardianship of L.J.H., minor child,* Case No. 04PR-23-1127, pending in Benton County Circuit Court. According to the publicly available documents, it appears Randy Mayfield (a biological grandparent) and his wife, Rebecca Mayfield, were awarded temporary physical and legal custody of Plaintiff's minor son on or about December 6, 2023, and were awarded a Final Guardianship of the minor child on or about March 2, 2024. On April 27, 2025, an Agreed Order was entered, modifying Plaintiff's visitation with the minor child. The Agreed Order reflects that Plaintiff agreed, among other things, to take parenting classes in order to resume overnight visitation with his minor child, and to dismiss a 2024 civil lawsuit for slander that Plaintiff brought against the Mayfields in Washington County Circuit Court (Case No. 72-CV-24-4819).

5.     The undersigned has reviewed the pleadings in the Benton County case (and the Washington County slander case) as well as Plaintiff's Complaint herein. It is observed that Plaintiff is attempting to re-litigate Judge Scott's finding that Plaintiff was unfit to have custody of his minor son as well as appeal the Final Guardianship awarded to the Mayfields; Plaintiff is challenging Judge Scott's detailed, post-trial factual findings about the fitness of Plaintiff as reflected in Judge Scott's Order of April 4, 2024. (Incidently, and in the same Order, Judge Scott appears to have also found the minor child's biological mother, Heather Mayfield, unfit for custody of the child.)

5.     While sympathetic to Plaintiff's frustrations with the judicial system, federal courts lack jurisdiction over domestic relation matters such as the issuance of divorce, allowance of alimony and child custody; this is known as the domestic relations exception to federal jurisdiction which has been recognized for more than 180 years. *Ankenbrandt v. Richards,* 504 U.S. 689, 703 (1992) (distinguishing a family tort claim from a child custody claim). State courts have exclusive jurisdiction over these matters. *Id.*, at 703-704. While Plaintiff purports to allege violations of federal law, the relief Plaintiff seeks is custody of his minor child (and/or changes to visitation and support) and this is not relief that the federal courts generally can order. None of Plaintiff's claims – even when viewed in the light most favorable to him – raise prima facie issues of constitutional dimension.

Even if this court could properly exercise jurisdiction, it would abstain from doing so pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), as applied by *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 432 (1982). The Supreme Court has made clear that lower federal courts must decline to hear challenges to pending state actions involving important state interests. *See Moore v. Sims*, 442 U.S. 415, 435 (1979) ("[f]amily relations

are a traditional area of state concern."); *Lewis v. Seventh Cir. Ct. - S.D. Unified Jud. Sys.,* 2018 WL 7247048, at *3 (D.S.D. Nov. 28, 2018) (explaining that domestic relations is "a traditional area of state concern where federal abstention is particularly important").

Here, there have been ongoing domestic proceedings in Benton County Circuit Court since at least 2023 which implicate important state interests (custody of a 5 year old child) and those state proceedings provide an adequate opportunity to raise all manner of challenges, including constitutional ones. *Aaron v. Target Corp.*, 357 F.3d 768, 774 (8th Cir. 2004). The undersigned further observes that the timing of Plaintiff's Complaint – alleging malfeasance on the part of Judge Scott – suggests a direct attempt to obstruct or interfere with visitation requirements/orders entered by Judge Scott during 2023-2025. "[A]s a matter of policy and comity, these local problems should be decided in state court." *Overman v. United States*, 563 F.2d 1287 (8th Cir. 1977).

Even if Plaintiff could jump over all of these hurdles, the *Rooker-Feldman*[1] doctrine would preclude this Court's exercise of jurisdiction. The *Rooker–Feldman* doctrine "applies to cases brought by state-court losers complaining of injuries caused by state-court judgments ... and inviting review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Ind. Corp.*, 544 U.S. 280, 284, 287 (2005). Here, it appears the state court previously adjudicated the rights and obligations of Plaintiff (and the child's mother) with respect to custody and visitation with their minor child. While the state court may possess the power to amend its orders and judgments, this federal court does not. *Lemonds v. St. Louis Cnty*, 222 F.3d 488, 492 (8th Cir. 2000).

Moreover, the doctrine of judicial immunity would act to bar Plaintiff's claims against Judge

---

[1] *D.C. Ct. of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.,* 263 U.S. 413 (1923).

Scott in this matter. Few doctrines were more solidly established at common law than the immunity of judges for liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray,* 386 U.S. 547, 553-54 (1967). The Supreme Court "has pronounced and followed this doctrine of the common law for more than a century." *Cleavinger v. Saxner,* 474 U.S. 193, 199 (1985)(citation omitted). Judicial immunity is only overcome in two narrow situations: (1) if the challenged act is non-judicial; and (2) if the action, although judicial in nature, was taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Moreover, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)(citations omitted); *see also Bolin v. Story,* 225 F.3d 1134, 1240-42 (11th Cir. 2000)(judicial immunity applies to *Bivens* actions); *Schwartz v. Weinstein,* 459 F.2d 882, 883 (8th Cir. 1972)(judicial immunity applies to actions under 42 U.S.C. § 1985); *Nolan v. Campbell,* 369 F. Supp. 1032, (E.D. Mo. 1974)(judicial immunity applies to actions brought under 42 U.S.C. §§ 1983 & 1981).

6. Plaintiff's remaining § 1983 claims are against private citizens, not state actors. While these claims are likely subject to dismissal on other grounds, the undersigned recommends that the Court abstain from entertaining them under the *Rooker–Feldman* doctrine as they spring from the litigation resulting in the Final Order of Guardianship entered by Judge Scott in 2024.

7. Accordingly, and for these reasons, the undersigned recommends that Plaintiff's Motion for Service be **DENIED.** It is further **RECOMMENDED** that this matter be **DISMISSED** as the federal court lacks jurisdiction.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the District Court.**

**RECOMMENDED** this 17th day of September 2025.

*Christy Comstock*
_____
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE